IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL J. GANNON,               :          CIVIL ACTION
                                 :
          Plaintiff,             :          NO. 03-4501
                                 :
     v.                          :
                                 :
NATIONAL RAILROAD PASSENGER      :
CORPORATION, t/a AMTRAK,         :
                                 :
          Defendant.             :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          MARCH 21, 2006

     Before the Court is defendant's motion for summary
judgment.  For the reasons that follow, defendant's motion will
be granted as to all federal claims and as to defendant's
counterclaims.  As to plaintiff's state-law claims, the Court
will decline to exercise jurisdiction.

I.   BACKGROUND

     For the purposes of this motion, the facts cited below
are either undisputed or viewed in the light most favorable to
plaintiff.  Plaintiff Michael Gannon ("plaintiff") was employed
at-will as a criminal investigator by defendant National Railroad
Passenger Corporation ("defendant" or "Amtrak"), Office of
Inspector General, from August 1989 until August 31, 2001.
Plaintiff worked at Philadelphia's 30th Street Station.  He was
responsible for investigating financial irregularities and
misconduct of Amtrak employees.

     While plaintiff was employed full-time by Amtrak, he

was also a Reservist in the United States Air Force.  On May 1, 1999 plaintiff was called to active duty to serve in Kosovo during the conflict in the Balkans.

Under Amtrak policy, an employee called to active military duty is placed on leave-of-absence without pay until the employee returns (not to exceed four years).  (Def.'s Mot. Summ. J., Exh. 3, Amtrak's Leave of Absence Policy.)  The employee is required to submit a written request for leave to his or her supervisor.  Plaintiff alleges that although he did not submit a written request for an unpaid leave-of-absence, he did call his immediate supervisor Joseph O'Rourke ("O'Rourke") to notify him of his activation for military service.  O'Rourke, however, did not timely submit a "Personal Action Request" or "2000" to activate the change in status and pay.

In late September or early October 1999 plaintiff learned from his wife, who was receiving plaintiff's pay stubs from Amtrak, that Amtrak continued to make direct deposits into his bank account.  (Pl.'s Dep., 13:14-15:5.)  Plaintiff did not act to rectify the situation.  Accordingly, plaintiff continued to receive his Amtrak pay while he was away on military leave, from May 1, 1999 until December 17, 1999.  Plaintiff received over $34,000 from Amtrak during this period.

On December 22, 1999, after plaintiff returned from active military service, O'Rourke gave him a "Letter of

2

Instruction," which indicated that defendant overpaid plaintiff during his tour-of-duty. (Compl., Exh. D, Letter of Instruction.) The "Letter of Instruction" directed plaintiff to contact defendant's finance manager, Thomas Basara ("Basara") to arrange for reimbursement.

As directed, plaintiff did contact Basara and scheduled a meeting for mid or late January 2000. However, despite numerous conversations over the next twenty months, the parties were unable to agree upon a repayment schedule. (Pl.'s Dep., 43:17-44:19.) According to plaintiff, the dispute centered on whether he would have to repay the entire gross pay (including employment taxes withheld and submitted to the IRS), which Amtrak insisted upon, or whether he would have to repay the net wages that were actually received, which plaintiff demanded. (Pl.'s Resp. 5.) Plaintiff contends that he made a good-faith attempt to reach an agreement, but Amtrak repeatedly refused to assist plaintiff in recovering overpaid taxes from the IRS should plaintiff comply with Amtrak's demand. (Id.)

In August 2000 defendant unilaterally began to withhold wages from plaintiff to recover the funds that it had inadvertently paid during plaintiff's tour-of-duty. Defendant subsequently ceased the automatic withholdings upon plaintiff's protests.

At this point, plaintiff retained counsel. Counsel

sent a letter dated November 22, 2000 to Amtrak alleging that defendant's conduct violated the discrimination provisions of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). Approximately one week later, on or about November 29, 2000, Amtrak entered into an agreement with the Inspector General of the National Archives & Records Administration ("NARA") to conduct an investigation of plaintiff in connection with the wage-payment issues, both with respect to the recent call to active duty as well as past military leaves where Amtrak suspected that he was also "double-dipping."

After an extensive investigation, NARA issued an interim report, which concluded that "while out on military leave, both active duty and annual tours, Mr. Gannon collected and retained his AMTRAK salary and reserve military pay, in violation of AMTRAK leave procedures." (Def.'s Mot. Summ. J., Exh. 7, Interim Report of Investigation.) The report discussed financial irregularities with respect to the current wage dispute, as well as similar misconduct during prior military leaves. (Id.) The results of the investigation were not disclosed to plaintiff at the time. On August 31, 2001 Amtrak terminated plaintiff's employment.

On August 24, 2003 plaintiff filed a six-count complaint alleging (1) wrongful termination, (2) wrongful termination and retaliation under USERRA, (3) violation of the

Age Discrimination Employment Act ("ADEA"), (4) violation of the
Federal Employer's Liability Act ("FELA"), (5) negligent
infliction of emotional distress, and (6) intentional infliction
of emotional distress.[1]  On October 15, 2003 defendant filed
counterclaims, alleging conversion and unjust enrichment, seeking
reimbursement for the monies inadvertently paid.

Now before the Court is defendant's motion for summary
judgment on counts II through VI, as well as on defendant's
counterclaims for conversion and unjust enrichment.  For the
following reasons, defendant's motion for summary judgment will
be granted as to all federal claims and as to defendant's
counterclaims.

II.  DISCUSSION

A.  <u>Legal Standard</u>

A court may grant summary judgment when "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  A fact is "material" if its existence or non-existence
would affect the outcome of the suit under governing law.
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  An

---

[1]     Count I, wrongful termination, was subsequently
dismissed (doc. no. 11).

5

issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact.  Id. at 248-49.  In determining whether any genuine issues of material fact exist, all inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party.  Coregis Ins. Co. v. Baratta & Fenerty, Ltd., 264 F.3d 302, 305-06 (3d Cir. 2001).

B.   USERRA (Count II)

Plaintiff asserts two claims under USERRA: wrongful termination under 38 U.S.C. § 4311(a) and retaliation under 38 U.S.C. § 4311(b).

1.   Wrongful termination

Under § 4311(a) of the USERRA, "[a] person who is a member of . . . a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership . . . ."  38 U.S.C. § 4311(a).  An employer is in violation of § 4311(a) "if the person's membership . . . in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership . . . ."  Id. at 4311(c)(1).

The statute thus established the burden-shifting framework under which USERRA claims are to be evaluated.  The

6

plaintiff bears the initial burden of coming forward with admissible evidence from which a factfinder could reasonably conclude that military status was a "motivating factor" in the employer's challenged adverse employment decision.  See Gordon v. Wawa, Inc., 388 F.3d 78, 84 (3d Cir. 2004) (citing § 4311(c)(1)); Satterfield v. Borough of Schuykill Haven, 12 F. Supp. 2d 423, 439 (E.D. Pa. 1998).  If the employee has met this burden, "the burden then shifts to the employer to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same adverse action."  Coffman v. Chugach Support Serv., Inc., 411 F.3d 1231, 1238 (11th Cir. 2005) (citing § 4311(c)(1); see also Maxfield v. Cintas Corp. No. 2, 427 F.3d 544, 551 (8th Cir. 2005); Leisek v. Brightwood Corp., 278 F.3d 895, 899 (9th Cir. 2002); Hill v. Michelin N. Am., Inc., 252 F.3d 307, 311 (4th Cir. 2001); Sheehan v. Dep't of Navy, 240 F.3d 1009, 1013 (Fed. Cir. 2001); Satterfield, 12 F. Supp. 2d at 439.

        In the instant case, plaintiff alleges that the decision to terminate his employment was motivated by military bias.  Plaintiff points to a statement allegedly made by his immediate supervisor O'Rourke as he was giving plaintiff the "Letter of Instruction" on December 22, 1999, which occurred a year and a half prior to plaintiff's termination.  Plaintiff alleges that O'Rourke told him that Amtrak, and not the Air

Force, was his primary employer. (Pl.'s Resp. 8.)  Other than
this stray remark by a non-decisionmaker, plaintiff has produced
no evidence of any military bias on behalf of defendant.[2]

The Court finds that, even drawing all inferences and
resolving all doubts in favor of plaintiff, plaintiff has failed
as a matter of law to make out a prima facie case of wrongful
termination under USERRA.  As the Third Circuit has held,
"[S]tray remarks by non-decision makers . . . are inadequate to
support an inference of discrimination by the employer." Gomez
v. Allegheny Health Serv., Inc., 71 F.3d 1079, 1085 (3d Cir.
1995); see also Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983
F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decision-
makers or by decision-makers unrelated to the decision process
are rarely given great weight, particularly if they were made
temporally remote from the date of decision.").  On this record,
the lone stray remark by a non-decisionmaker made a year and a
half prior to plaintiff's termination, even if true, is
insufficient to defeat the movant's request for summary judgment.

---

[2]    At oral argument, plaintiff also contended that the
"Letter of Instruction" reflected an anti-military bias because
it put him on notice of poor work performance, only three or four
days after returning from active duty.  If factually true, the
timing of the notification of poor work performance may be
evidence of anti-military bias.  However, the Court has reviewed
the "Letter of Instruction" and it makes no mention of poor work
performance.  (Compl., Exh. D, Letter of Instruction.)  Rather,
the "Letter of Instruction" informs plaintiff about the
improperly paid wages and the appropriate course to initiate
reimbursement.

Even if plaintiff established a prima facie case of wrongful termination under USERRA, Amtrak is entitled to summary judgment because the evidence shows that Amtrak would have made the same decision to terminate plaintiff regardless of his military status.  Plaintiff admits that as of September or October 1999, he knew that he was receiving Amtrak wages to which he was not entitled and that he would have to return the money.  (Pl.'s Dep., 13:23-15:1.)  Defendant provided plaintiff with the opportunity to make repayment.  Plaintiff understood that his failure to comply could "adversely impact[]" his employment.  (Def.'s Mot. Summ. J., Exh. 5, Letter from plaintiff.)  Over the next twenty months or so, from December 1999 until his termination in August 2001, plaintiff and defendant could not agree on procedures or amount for repayment.  (Pl.'s Dep., 43:17-45:20.)  The monies due were not repaid.

The investigation conducted by NARA revealed that not only had plaintiff wrongly retained the Amtrak salary from the recent tour-of-duty, but he also failed to remit excess wages he received during periods of military service in prior years.  (Def.'s Mot. Summ. J., Exh. 7, Interim Report of Investigation.)  The NARA investigation also revealed that there were inconsistencies between plaintiff's military orders and the dates on which he had represented to Amtrak that he was serving military duty.  (Id.)  These facts are not contested by

plaintiff.

Based on the foregoing, Inspector General Fred Weiderhold ("Weiderhold"), the decisionmaker in this case, terminated plaintiff.  According to Weiderhold, the decision to terminate plaintiff was based "on the fact that Mr. Gannon, after admitting that he was required to repay the wages to Amtrak, failed for over 20 months to repay the wages or agree to a repayment plan."  (Def.'s Mot. Summ. J., Exh. 1, Affidavit of Amtrak Inspector General Fred Weiderhold, ¶ 14.)  Weiderhold stated that this "is an unacceptable state of affairs for a special agent in the Inspector General's Office, whose primary responsibilities included investigating other Amtrak employees for similar conduct and securing repayment of Amtrak's funds." (Id. at ¶ 16.)

In light of these circumstances, even drawing all inferences and resolving all doubts in favor of plaintiff, the Court finds that there is no genuine issue of material fact with respect to the non-discriminatory reason asserted by Amtrak for plaintiff's termination.  Because under these facts defendant can prove that the action would have been taken regardless of plaintiff's military status, defendant is entitled to judgment as a matter of law.  Thus, summary judgment in favor of defendant as to plaintiff's claim for wrongful termination under § 4311(a) is appropriate.

2.    Retaliation

Plaintiff alleges that Amtrak initiated an investigation by an outside agency, NARA, in retaliation for making allegations of discrimination.  Under § 4311(b) of USERRA,

> [a]n employer may not discriminate in employment or take adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under [the USERRA], (2) has testified or otherwise made a statement in or in connection with any proceeding under [the USERRA], (3) has assisted or otherwise participated in an investigation under [the USERRA], or (4) has exercised a right provided for in [the USERRA].

38 U.S.C. § 4311(b).  An employer is in violation of § 4311(b),

> if the person's (A) action to enforce a protection afforded any person under [the USERRA], (B) testimony or making of a statement in or in connection with any proceeding under [the USERRA], (C) assistance or other participation in an investigation under [the USERRA], or (D) exercise of a right provided for in [the USERRA], is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such a person's enforcement action, testimony, statement, assistance, participation, or exercise of a right.

Id. at § 4311(c)(2).  The same burden-shifting scheme under discrimination claims brought under § 4311(a) applies to § 4311(b) retaliation claims.  See Gagnon v. Sprint Corp., 284 F.3d 839, 853-54 (8th Cir. 2002).

To satisfy his initial burden, plaintiff offers evidence that the independent investigation of plaintiff's

conduct[3] was motivated, at least in part, by plaintiff's
assertions through counsel that Amtrak's conduct violated USERRA.
On November 22, 2000 plaintiff's prior counsel, Thomas J.
Stevens, notified Amtrak that he was retained by plaintiff and
that plaintiff alleged discrimination under USERRA.  Thereafter,
Amtrak and NARA entered into an "Interagency Agreement" for the
investigation of plaintiff.  The effective date of the
"Interagency Agreement" is November 29, 2000, only one week after
plaintiff's counsel raised the legal claims in the letter to
defendant.

Amtrak responds that while the effective date of the
"Interagency Agreement" was November 29, 2000, Weiderhold first
requested that NARA conduct the investigation several weeks
before they reached the formal agreement (and thus prior to
receipt of the letter from plaintiff's counsel).  (Def.'s Mot.
Summ. J., Exh. 1, Affidavit of Amtrak Inspector General Fred
Weiderhold, ¶ 4.)

Under the circumstances, given the temporal proximity
of the protected activity and the adverse employment action, the
Court concludes that, under the summary judgment standard,
plaintiff has satisfied his initial burden of showing that the
NARA investigation was motivated, at least in part, by

---

[3]     For the purposes of this motion, the Court will assume
that the initiation of an investigation by an outside agency that
led to plaintiff's termination is an adverse employment action.

plaintiff's threat of legal action.  <u>See, e.g.</u>, <u>Jensen v. Potter</u>, 435 F.3d 444, 450 (3d Cir. 2006) (holding that temporal proximity between the protected activity and the alleged discrimination, by itself, may raise the requisite inference of discrimination when it is "unusually suggestive of retaliatory motive") (quoting <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 503-04 (3d Cir. 1997)).[4]

The burden thus shifts to Amtrak to show that its decision to initiate a NARA investigation would have been taken regardless of plaintiff's threats of legal action.  As described above, it is undisputed that despite continuous attempts to resolve the wage-payment issue, plaintiff retained monies that were improperly paid.  Thus, Amtrak decided to initiate an investigation into plaintiff's activities.  According to Amtrak,

---

[4]     Plaintiff also raises the case of Matt Hutchinson ("Hutchinson"), a non-military former employee of Amtrak's Office of Inspector General, whom he believes was similarly situated but was treated differently.  (Pl.'s Resp. 8.)  Hutchinson was terminated approximately ten years ago for taking a sick day and providing a false doctor's note when he was actually on vacation. Amtrak fired Hutchinson, but Amtrak did not initiate an outside investigation into his wrongdoing.

Amtrak responds that the comparison is not probative. (Def.'s Mot. Summ. J. 19-21.)  The Court agrees.  Hutchinson's circumstances are far less serious and much less complex than the instant circumstances.  (Def.'s Mot. Summ. J., Exh. 1, Affidavit of Amtrak Inspector General Fred Weiderhold, at ¶¶ 9-10.) There was simply no need to refer the matter to an outside agency. Additionally, according to Weiderhold, "the concept of referring investigations to outside agencies was not a common practice" at the time of the Hutchinson incident.  (<u>Id.</u> at ¶ 8.)

because an internal investigation would have required plaintiff's supervisors and co-workers at Amtrak's Office of Inspector General to investigate plaintiff's case, Weiderhold decided to request an independent investigation by an outside agency to determine the facts.  (Def.'s Mot. Summ. J., Exh. 1, Affidavit of Amtrak Inspector General Fred Weiderhold, ¶ 3.)  According to Weiderhold, the use of the outside agency would avoid the appearance of a conflict of interest, either in favor of or against plaintiff.  (Id.)  Plaintiff does not dispute the potential conflict of interest.  In fact, plaintiff agreed that the Office of the Inspector General may have faced criticism if it had conducted the investigation of one of its own employees. (Pl.'s Dep., 93:11-94:11.)[5]

In light of these circumstances, even drawing all inferences and resolving all doubts in favor of plaintiff, the Court finds that there is no genuine issue of material fact with respect to the non-discriminatory reason asserted by Amtrak for the NARA investigation.  Because under these facts defendant can prove that the action would have been taken regardless of plaintiff's military status, defendant is entitled to judgment as

_____

[5]     Although plaintiff claimed that the referral was a "criminal investigation," the undisputed facts, including the Interagency Agreement between Amtrak and NARA, show that the investigation was conducted by the inspector general of NARA, who had prior experience in conducting Amtrak investigations, and was not for the purpose of conducting a "criminal investigation."

14

a matter of law.  Thus, summary judgment in favor of defendant as
to plaintiff's claim for retaliation under § 4311(b) is
warranted.[6]

    C.   ADEA (Count III)

Amtrak argues that even assuming plaintiff can make out
a prima facie case of age discrimination under the ADEA, 29
U.S.C. §§ 621-634, Amtrak is entitled to summary judgment because
there is insufficient evidence from which a jury could reasonably
conclude that Amtrak's stated reason for its decision to
terminate plaintiff was pretextual.[7]  The Court agrees.

---

[6]    Plaintiff added at oral argument that defendant's leave
policy is in violation of USERRA because the leave policy
requires advance written notice of service and the statute
permits oral or written notice, 38 U.S.C. § 4312(a)(1).  The
Court finds that the defendant's policy, even if it is contrary
to the statute, is not relevant to the discrimination claims
before the Court.

    Plaintiff also contended that the several-day delay in
reemploying plaintiff was in violation of § 4313(a), which
requires the employer to "promptly reemploy[]" the employee.  The
Court finds that the several-day delay to process the
reemployment is reasonable and does not violate the statute.
The Court adds that plaintiff has not alleged either of these
claims in his complaint.

[7]    Under McDonnell Douglas Corp. v. Green, 411 U.S. 792
(1973), the plaintiff must first "produce evidence that is
sufficient to convince a reasonable factfinder to find all of the
elements of a prima facie case." Keller v. Orix Credit Alliance,
Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (quoting St. Mary's
Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)).  If the plaintiff
establishes a prima facie case, "the burden of production (but
not the burden of persuasion) shifts to the defendant, who must
then offer evidence that is sufficient, if believed, to support a
finding that it had a legitimate, nondiscriminatory reason for
the discharge." Id. (citing St. Mary's, 509 U.S. at 506-07).

As described above, Amtrak asserts that its non-discriminatory reason for terminating plaintiff was that plaintiff, while admitting that he was required to repay the wages to Amtrak, failed to do so for over 20 months. (Def.'s Mot. Summ. J., Exh. 1, Affidavit of Amtrak Inspector General Fred Weiderhold, ¶ 14.)  Additionally, an investigation revealed that plaintiff had improperly retained Amtrak pay during prior military engagements and that there were inconsistencies between plaintiff's military record and his request for military leave.

To survive a motion for summary judgment, plaintiff must either discredit the employer's proffered reasons for the termination or show that discrimination was more likely than not a motivating or determinative cause of the termination.  <u>Fuentes</u>, 32 F.3d at 764.  The <u>Fuentes</u> court continued:

> To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for

---

The plaintiff may then "survive summary judgment . . . by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions." <u>Id.</u> (citing <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994)).

> its action that a reasonable factfinder could
> rationally find them "unworthy of credence,"
> and hence infer "that the employer did not act
> for    [the    asserted]    non-discriminatory
> reasons."

Id. at 765 (internal citations omitted).

Plaintiff offers two pieces of evidence to show that Amtrak terminated plaintiff because of his age and to discredit Amtrak's asserted non-discriminatory reason.  First, plaintiff offers a comment allegedly made by his immediate supervisor O'Rourke that "there are younger people in this office with new and fresher ideas.  Can you keep up with them?"  (Id. at 66:6-9.) Second, plaintiff offers a comment allegedly made by Collin Carriere, deputy legal counsel for Amtrak, who allegedly said to plaintiff, "[I]t's a fast-paced office, can you keep up with it?" (Id. at 66:4-5.)  The comments occurred when plaintiff was sixty years old, at least eight months prior to his August 31, 2001 termination. (Id. at 66:10.)  Plaintiff testified that "[j]ust those comments" give rise to his age discrimination action.  (Id. at 67:20-24.)

Even assuming that these comments were made to plaintiff, the comments alone cannot support a finding of age discrimination.  The comments were made by non-decisionmakers and were remote in time from the adverse employment decision.  Thus, they do not demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Amtrak's

17

proffered reason for the termination such that the proffered reason is "unworthy of credence."  See Gomez, 71 F.3d at 1085 (holding that stray remarks by non-decision makers do not support an inference of discrimination); Ezold, 983 F.3d at 545 (same). Accordingly, Amtrak's motion for summary judgment on count III, age discrimination, will be granted.

          D.   FELA (Count IV)

     Plaintiff alleges that defendant has violated its duty under FELA, 48 U.S.C. §§ 51-60, by subjecting plaintiff to work conditions, i.e., initiation of the NARA investigation and termination, which caused emotional distress.  (Compl. ¶¶ 57-59.) Plaintiff claims that as a result of the distress, he has developed high blood pressure. (Id. at 60.)

     Plaintiff's claim for the negligent and intentional infliction of emotional distress under FELA fails as a matter of law.  Under FELA, "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."  48 U.S.C. § 51.  In Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 555 (1994), the Supreme Court decided that, while the "central focus" of FELA is on the physical perils of railroading, an emotional injury constitutes a cognizable "injury" under FELA, but only in the

18

limited circumstances when the emotional injury "would be compensable under the zone of danger test."  "Under this test, a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury himself, whereas a worker outside the zone will not."  Id. at 556.

In the instant case, plaintiff alleges that the initiation of the NARA investigation and plaintiff's termination caused emotional distress.  This simply is not a cognizable cause of action under FELA as interpreted by the Supreme Court in Consolidated Rail because plaintiff was not in the zone of danger.  Accordingly, defendant's motion for summary judgment as to plaintiff's claims for negligent and intentional infliction of emotional distress under FELA will be granted.

E.   Plaintiff's State-Law Claims

In Counts V and VI of the complaint, plaintiff alleges that the emotional distress caused by defendant's conduct led to his high blood pressure, and thus, defendant is liable for state-law negligent and intentional infliction of emotional distress. (Compl. ¶¶ 61-64.)

Because judgment is entered against plaintiff on all federal claims, this Court declines to exercise supplemental jurisdiction over plaintiff's state-law claims for intentional and negligent infliction of emotional distress.  See 28 U.S.C. §

1367(c)(3);  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350

(1988); Markowitz v. Northeast Land Co., 906 F.2d 100, 106 (3d

Cir. 1990) ("[T]he rule with [the Third Circuit] is that once all

claims with an independent basis of federal jurisdiction have

been dismissed the case no longer belongs in federal court.").

> F.   Defendant's Counterclaims

> Defendant alleges conversion and unjust enrichment as

counterclaims, seeking recovery of the funds allegedly improperly

paid by defendant.[8]  Defendant has moved for summary judgment on

its counterclaims.  The Court finds that there is no genuine

issue of material fact that plaintiff has retained the benefit of

the monies to which he is not entitled to the detriment of

Amtrak.  Plaintiff must reimburse defendant the gross amount

improperly paid by defendant.[9]

III. CONCLUSION

> Defendants' motion for summary judgment is granted as

to all federal claims and as to defendant's counterclaims.

Having granted summary judgment as to all federal claims, the

Court will decline to exercise jurisdiction over plaintiff's

---

[8]     Amtrak has not requested reimbursement of any alleged
earlier payments that may have been improperly retained by
plaintiff, and thus, these earlier overpayments are not at issue
in the matter before the Court.

[9]     Defendant must, of course, cooperate with plaintiff in
recovering any monies withheld on behalf of the taxing
authorities.

state-law claims and will dismiss them without prejudice.  An
appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MICHAEL J. GANNON,       :          CIVIL ACTION
                              :
         Plaintiff,     :         NO. 03-4501
                              :
        v.               :
                              :
NATIONAL RAILROAD PASSENGER  :
CORPORATION, t/a AMTRAK,     :
                              :
         Defendant.     :

**O R D E R**

**AND NOW**, this **21st** day of **March, 2006,** it is hereby

**ORDERED** that defendant's motion for summary judgment (doc. no.

29) is **GRANTED** as to all federal claims and as to defendant's

counterclaims.

**IT IS FURTHER ORDERED** that plaintiff's state-law claims

are **DISMISSED WITHOUT PREJUDICE.**


**AND IT IS SO ORDERED.**


 **S/Eduardo C. Robreno**

**EDUARDO C. ROBRENO, J.**